**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |
|---|---|
| **RAFAEL MASON,** | * |
| **Plaintiff,** | * |
| **v.** | *     **Case No.:  PWG-13-1077** |
| **MONTGOMERY COUNTY,** | *                **PWG-14-3718** |
| **Defendant.** | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

Plaintiff Rafael Mason, an African-American, filed suit in April 2013, bringing claims of racial discrimination, hostile work environment and retaliation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*; the Maryland Fair Employment Practices Act ("Maryland Act"), Md. Code Ann., State Gov't §§ 20-601 *et seq.* and 20-1001 *et seq.*; and 42 U.S.C. § 1983, and a separate claim for equitable relief, against Defendants Montgomery County, Maryland (the "County") and Montgomery County Police Department (the "Department").   Compl., ECF No. 1 in PWG-13-1077 ("*Mason I*").   Plaintiff's ongoing employment difficulties eventually culminated in his termination.   While the County's second motion to dismiss and Plaintiff's second request for leave to amend both were pending in *Mason I*, Plaintiff filed a separate suit against the County on November 28, 2014, alleging that his termination was an act of race discrimination and retaliation, in violation of Title VII and the Maryland Act, and bringing another claim for equitable relief.   Compl., ECF No. 1 in PWG-14-3718 ("*Mason II*").   The County has moved to dismiss both suits, and Plaintiff has opposed the motions, incorporating motions to amend into his oppositions.   The motions are ripe for resolution.   *See* ECF Nos. 22, 26, 27 in *Mason I*; ECF Nos. 5, 8, 9 in *Mason II*.   A hearing is not

necessary.  *See* Loc. R. 105.6.  Because these claims all should be part of the same suit, I will consolidate the cases and, because Plaintiff fails to state a claim as to all but his Title VII and Maryland Act retaliation claims based on his termination, I will grant Defendant's motions as to Plaintiff's claims in *Mason I* and all but Plaintiff's Title VII and Maryland Act retaliation claims in *Mason II*, dismissing all but these retaliation claims based on his termination, as presented in his proposed amended complaint in *Mason II*.  I will deny Plaintiff's motions to amend as to all but these two termination-related retaliation claims as well.

## I.  BACKGROUND[1]

Plaintiff was employed as a police officer at the Department's Division of Security Services, beginning in 1995. Am. Compl. in *Mason I* ¶¶ 1, 14, ECF No. 21 in *Mason I*.  He filed his first complaint of racial discrimination against the Department in 2008, while working in the Rockville facility.  *Id.* ¶ 17.  "[T]o obtain relief from the discriminatory and hostile work environment," he was transferred to Germantown.  *Id.* ¶ 18.

Plaintiff was transferred back to Rockville in Spring 2011, at which time he was a Security Officer II.  *Id.* ¶¶ 14, 19.  He began to "regularly complain[]" informally to his supervisors, and he filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC") in September 2011, late 2012, and September 2013.  *Id.* ¶¶ 94–98. Plaintiff alleges that his white supervisors started to harass and discriminate against him upon his transfer to the Rockville facility, and when he complained, they retaliated.  *Id.* ¶¶ 20, 99–103.

---

[1] For the purposes of resolving the County's motion to dismiss *Mason I*, I accept as true the facts alleged in Plaintiff's Amended Complaint in *Mason I* and Plaintiff's Amended Complaint in *Mason II*.  *See Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011).  Except where augmented by Plaintiff's Amended Complaint, this factual background comes from this Court's Memorandum Opinion issued on December 13, 2013 in *Mason I*.  ECF No. 13.

He claims that he, but not his white co-workers, had to follow "arduous procedures" to request training and he, but not a white co-worker, was denied opportunity to attend a training session that "would make [him] more desirable for future promotions and future opportunities." *Id.* ¶¶ 21, 22, 24. His supervisors allegedly "circulat[ed] false information" about him, *id.* ¶ 26, and they assigned him to more dangerous posts than white co-workers and then "ignored" his request to change posts, *id.* ¶¶ 28, 31–32

Plaintiff was demoted, suspended and placed on leave without pay when criminal charges, based on allegations his girlfriend made, were brought against him, while "[s]imilarly situated White co-workers (no known EEO activity) [were] allowed to use their annual leave or were permitted to continue working . . . when they were suspended and/or being investigated for the same, similar or more egregious conduct." Am. Compl. in *Mason I* ¶¶ 40–43, 54. The charges were dismissed and expunged but, in December 2012, Plaintiff's supervisor placed him on paid leave, without opportunity for overtime, "for Conduct Unbecoming an Officer," based on the expunged criminal charges, while the Department conducted an internal investigation. *Id.* ¶¶ 51, 57. Also, in June 2013, "several White Sergeants, with Plaintiff's supervisors' approval, passed around a petition for White Security Officers to sign stating that they did not want Plaintiff to work with them." *Id.* ¶ 61. According to Plaintiff, he "performed exemplary work and received many letters of appreciation for his dedication and operating beyond his assigned duties," and he "generally worked well with his peers and there were no issues until he began to complain about discrimination." *Id.* ¶¶ 15, 16.

*Mason II* begins where *Mason I* ends: Plaintiff was terminated on November 19, 2013 "for conduct unbecoming an officer and other charges associated therewith." Compl. in *Mason II* ¶¶ 12, 21–22. Yet, "[s]imilarly situated White employees (no known EEO activity) and of a

different race than Plaintiff have committed similar acts as Plaintiff was accused of but they were not disciplined, or even in the same or similar instances proposed for discipline." *Id.* ¶ 25. Plaintiff provides examples of various activities by three white males who were not disciplined. *Id.* ¶¶ 26–33.    Again, Plaintiff brings claims of race discrimination and retaliation, in violation of Title VII and the Maryland Act, and he recites many of the same allegations that he made in *Mason I* with regard to his supervisors' actions that allegedly violated these Acts.  *Id.* ¶¶ 12–24, 35–39.

Plaintiff filed *Mason I* in April 2013.  Defendants moved to dismiss, ECF No. 7, which Plaintiff opposed while alternatively seeking leave to amend, ECF No. 11, and the Court[2] granted Defendants' motion but allowed Plaintiff the opportunity to amend to cure the deficiencies that Defendants asserted.  Dec. 13, 2013 *Mason I* Mem. Op. & Order, ECF Nos. 13, 14.  The Court "caution[ed] Plaintiff that the failure to state facially plausible claims a second time around may result in the dismissal of his claims with prejudice."  *Id.* at 12.

Having had the benefit of Defendants' motion to dismiss and this Court's memorandum granting that motion with leave to amend to provide guidance on how to overcome his pleading deficiencies, Plaintiff amended his Complaint, eliminating his claims against Montgomery County Police Department and his § 1983 claim, and augmenting his factual allegations. Am. Compl. in *Mason I*.  The County then filed a second motion to dismiss in October 2014—the currently pending motion in *Mason I*—, arguing that "Plaintiff's allegations relating to a workers' compensation claim and a matter before the Merit System Protection Board ['Board'] are not properly before this Court"; Plaintiff failed to comply with the Local Government Tort Claims Act, Md. Code Ann., Cts. & Jud. Proc. § 5-304(b)(2) – (c)(3)(ii), for his Maryland Act

---

[2] Judge Williams presided at the time.  The case since has been reassigned to me.  *See* Docket.

claims; and, despite amending, Plaintiff still failed to state a claim for discrimination, hostile work environment, or retaliation.   Def.s' *Mason I* Mot. ¶¶ 3–5, ECF No. 22 in *Mason I*.   In response, Plaintiff filed an opposition and, again, sought leave to amend on November 19, 2014, ECF No. 26 in *Mason I*.   In his Opposition, Plaintiff stated that he "inadvertently included" the Maryland Act claims (Counts III and IV), and that he included the worker's compensation and Board allegations "as background evidence, not [as bases for] relief," Pl.'s Opp'n 6, 17, such that the Amended Complaint comprises only the Title VII claims for race discrimination, hostile work environment, and retaliation, as well as the equitable relief claim.   Plaintiff insists that he sufficiently stated his claims under Title VII.   *Id.* at 6–17.

Less than two weeks after seeking leave to amend his claims in *Mason I*, Plaintiff filed a second suit against the County on November 28, 2014, alleging the same five causes of action. Compl. in *Mason II*.   The County moved to dismiss the second suit as well, insisting that it fails to state a claim and "is duplicative of the claims already before this Court" in *Mason I* and therefore "is barred by the claim splitting doctrine."   Def.'s *Mason II* Mot. ¶¶ 4–6, ECF No. 5 in *Mason II*.   In response, Plaintiff voluntarily dismissed the equitable relief claim (Count V) and clarified that the remaining claims pertain only to his termination, for which he did not file his EEOC Charge until September 2013 and did not have his Right to Sue letter from the EEOC until August 29, 2014, months after the January 13, 2014 deadline for amending in *Mason I*. Pl.'s *Mason II* Mem. 5, 6, 8 n.1, ECF No. 8 in *Mason II*; see EEOC Ltr., Pl.'s *Mason II* Mem. Ex. 1, ECF No. 8-1.   He also seeks leave to amend yet again to state a viable claim on the remaining four causes of action.   *Id.*   The County maintains that, even if recast as a suit focused on Plaintiff's termination, *Mason II* must nonetheless be dismissed because, as pleaded, Plaintiff could not have exhausted his administrative remedies.

## II.    CLAIM SPLITTING

Defendant argues that the claim splitting doctrine bars *Mason II* because *Mason I* "contain[s] the same claims and decidedly similar allegations."   Def.'s *Mason II* Mem. 2; *see* Def.'s *Mason II* Reply 1–2.   Claim splitting "prohibits a plaintiff from prosecuting its case piecemeal, and requires that all claims arising out of a single wrong be presented in one action." *Lacy v. Nat'l R.R. Passenger Corp.*, No. RDB-14-179, 2014 WL 6967957, at *5 (D. Md. Dec. 8, 2014) (quoting *Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 329 F. Supp. 2d 574, 579 (D. Md. 2004).   This doctrine, "[l] ike res judicata, . . . will bar the 'second suit . . . if the claim involves the same parties or their privies and 'arises out of the same transaction or series of transactions' as the first claim.'"   *Id.* (quoting *Sensormatic Sec. Corp.*, 329 F. Supp. 2d at 579). The Court considers (1) whether the second suit "'arises out of the same operative facts'" as the first and (2) "whether the 'interests of judicial economy and avoiding vexatious litigation outweigh the plaintiff's interest in bringing the second suit'" to determine whether the claims presented should have been brought as part of the prior lawsuit.   *Id.* at *6 (quoting *Jenkins v. Gaylord Entmt. Co.*, 840 F. Supp. 2d 873, 883 (D. Md. 2012)).   If the claim splitting doctrine applies, the Court "may stay the second suit, dismiss it without prejudice, or consolidate the two actions."   *Hare v. Opryland Hospitality, LLC*, No. DKC-11-1439, 2011 WL 6153128, at *2 n.3 (D. Md. Dec. 9, 2011).

Here, Plaintiff's termination, the basis for *Mason II*, is the final act in the series of allegedly discriminatory acts that Plaintiff alleges in *Mason I*.   But, contrary to the County's assertion that "[a]ny such attempt at 'claim splitting' *must* be dismissed," Def.'s Reply 1 (quoting *Chihota v. Fulton, Friedman & Gullace, LLP*, No. WDQ-12-975, 2012 WL 6086860, at *2 (D. Md. Dec. 5, 2012) (emphasis added), the Court simply "is empowered to dismiss the

duplicative suit," *Chihota*, 2012 WL 6086860, at *2, while it also may use its discretion to stay

the second suit *or consolidate* the two.  *See Hare*, 2011 WL 6153128, at *2 n.3.  Often, dismissal

is appropriate where the plaintiff files a second suit after being denied leave to amend to add

those claims to the first action, *see Chihota*, 2012 WL 6086860, at *2 n. 18, but that is not the

case here.  Because I may consolidate these matters, "the 'interests of judicial economy and

avoiding vexatious litigation'" do not "'outweigh the plaintiff's interest in bringing the second

suit.'"  *Lacy*, 2014 WL 6967957, at *6.  Therefore, I will consolidate *Mason I* and *Mason II* for

purposes of ruling on the pending motions in each case, with the result that only a pair of

retaliation claims under Title VII and the Maryland Act rise, phoenix-like, from the ashes of the

two separate suits.  *See id.*

## III.     STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court may dismiss a claim or

complaint if it fails to state a claim upon which relief can be granted.  *Tucker v. Specialized Loan*

*Servicing, LLC*, ---- F. Supp. 3d ----, 2015 WL 452285, at *8 (D. Md. Feb. 3, 2015).  In resolving

a Rule 12(b)(6) motion, the Court bears in mind the requirements of Rule 8, *Bell Atlantic Corp.*

*v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  Specifically, a

complaint must contain "a short and plain statement of the claim showing that the pleader is

entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice," *Iqbal*, 556 U.S. at 678–79.  *See Velencia v. Drezhlo*, No. RDB-12-

237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012) (discussing standard from *Iqbal* and

*Twombly*).  "A claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

In an employment discrimination case such as this, "pleadings need not 'contain specific facts establishing a prima facie case of discrimination under the framework set forth' in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Westmoreland v. Prince George's Cnty.* ("*Westmoreland I*"), No. AW–09–2453, 2010 WL 3369169, at *3 (D. Md. Aug. 23, 2010) (quoting *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002)). Such a requirement "would essentially create a 'heightened pleading standard' under which a plaintiff without direct evidence of discrimination would need to plead a prima facie case even though she might uncover direct evidence during discovery." *Id.* (quoting *Swierkiewicz*, 534 U.S. at 511–12). If this were the case, a plaintiff claiming employment discrimination would have "'to plead more facts than [s]he may ultimately need to prove to succeed on the merits if direct evidence of discrimination is discovered.'" *Id.* (quoting *Swierkiewicz*, 534 U.S. at 512). Nonetheless, a plaintiff "must plead facts sufficient to state each element of the asserted claim." *Lopez v. BMA Corp.*, No. DKC–13–2406, 2013 WL 6844361, at *9 (D. Md. Dec. 24, 2013) (discussing *Swierkiewicz* holding and citing *Bass v. E.I. Dupont De Nemours & Co.*, 324 F.3d 761, 765–65 (4th Cir. 2003)). While *Iqbal* and *Twombly* highlight the danger of pleading a complaint that is so factually parsimonious that it fails to assert a plausible claim, *Swierkiewicz* is a counterbalancing reminder that a plaintiff need not (and ought not) plead "everything but the kitchen sink" when filing an employment discrimination claim. Plaintiff's insistence on repleading nearly the entirety of *Mason I* "as background evidence" but not as a basis for relief in *Mason II* was unnecessary, confusing, and inappropriate, and a stark contrast to what it should have been—"simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

## IV.    DISCUSSION

### A.    Racial Discrimination (Count I in *Mason I*; Counts I and III in *Mason II*)

To state a claim for racial discrimination in violation of Title VII or the Maryland Act,[3] Plaintiff must allege: "(1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) less favorable treatment than similarly situated employees outside the protected class." *Linton v. Johns Hopkins Univ. Applied Physics Lab., LLC*, No. JKB–10–276, 2011 WL 4549177, at *5 (D. Md. Sept. 28, 2011) (citing *White v. BFI Waste Servs.*, 375 F.3d 288, 295 (4th Cir. 2004)).

#### 1.  Mason I

In *Mason I*, the first element is undisputed.  As for an adverse employment action, Plaintiff relies on his allegations of unpaid administrative leave and the denied opportunity to attend a training session that "'would make [him] more desirable for future promotions and future opportunities.'"  Pl.'s *Mason I* Opp'n 7 (quoting Am. Compl. ¶ 24; citing *id.* ¶ 21).  Yet, Plaintiff states that he "is not seeking relief on . . . his suspension," *id.* at 17, so that cannot be the basis for his racial discrimination claim.  Thus, the only possible alleged adverse employment action is the denied training opportunity.

Assuming *arguendo* that the denial of training sufficed under these circumstances to constitute an adverse employment action, the issue is whether Plaintiff has alleged that he "was performing [his] job duties at a level that met [his] employer's legitimate expectations *at the time* of the adverse employment action." *Lettieri v. Equant, Inc.*, 478 F. 3d 640, 646 (4th Cir. 2007)

---

[3] Plaintiff's Maryland Act claims in *Mason II* are judged under the same standards as Title VII. *See* Dec. 13, 2013 *Mason I* Mem. Op. 11.

(emphasis added).  The County argues that Plaintiff has not.  Def.'s *Mason I* Mem. 13.  Plaintiff

counters that "the Amended Complaint specifically alleges, and the evidence will show, that Mr.

Mason 'performed exemplary work and received many letters of appreciation for his dedication

and operating beyond his assigned duties,'. . . . 'worked well with his peers and there were no

issues [with his performance]' until he complained," and he "'performed well and met all of the

Department's legitimate expectations."  Pl.'s *Mason I* Opp'n 7 (quoting Am. Compl. ¶¶ 15, 16,

69).  Most of these allegations are threadbare and conclusory and therefore insufficient to state a

claim.  Similarly, Plaintiff's frequently-invoked mantra that, in addition to the pleadings, "the

evidence will show" a factual basis for his claims entirely misses the point.  It is the sufficiency

of his pleadings—not his hopes about what as yet unidentified facts will prove if his claim

survives—that must stand or fall in response to a motion to dismiss.  *See Iqbal*, 556 U.S. at 678–

79.  Insofar as Plaintiff makes specific allegations, such that he "received many letters of

appreciation" and, arguably, that he "performed exemplary work," he provides greater

specificity, but fails to allege a timeframe.  Indeed, while he claims that he "generally worked

well with his peers and there were no issues until he began to complain," he also alleges that "he

filed a complaint of race discrimination as early as 2008."  Am. Compl. in *Mason I* ¶¶ 16–17.

Thus, it is reasonable to infer that there were "issues" after 2008, and Plaintiff was not denied the

training opportunity until sometime after "May 2011, . . . [w]hen he was transferred back to the

Rockville facility."  *See id.* ¶¶ 16–20.  Consequently, not only is it unclear when his work was

"exemplary," it appears that there may have been "issues" regarding his job performance at the

time he was denied training.  *See id.*  Plaintiff has failed to allege that he "was performing [his]

job duties at a level that met [his] employer's legitimate expectations *at the time* of the adverse

employment action."  *See Lettieri*, 478 F. 3d at 646.

Additionally, the County argues that Plaintiff's allegations do not "identify a similarly situated employee treated differently because of his or her race." Def.'s *Mason I* Mem. 14.  In response, Plaintiff insists that he alleges "comparators of a different race that were not subjected to the same adverse employment actions," including five white officers "who committed the same, similar or more egregious conduct than Mr. Mason and were not either placed on unpaid administrative leave and/or were not held to the same stringent procedures for training requests." Pl.'s *Mason I* Opp'n 8 (citing Am. Compl. ¶¶ 23, 43, 44, 59, 63, 68, 74, 80).  But, with regard to the training denial specifically, Plaintiff only alleges that "a less senior and lower ranked White co-worker (M.G.) was approved to, and did, attend the same training."  *See* Am. Compl. in *Mason I* ¶ 21.

To sufficiently allege that he was treated less favorably than similarly situated employees who were not in his protected class, Plaintiff must identify an employee (or employees) outside his protected class as a "comparator" and "'demonstrate that the comparator was "similarly situated" in all relevant respects.'"  *Williams v. Silver Spring Volunteer Fire Dep't*, No. GJH-13-2514, ---- F. Supp. 2d ----, 2015 WL 237146, at *16 (D. Md. Jan. 16, 2015) (quoting *Sawyers v. United Parcel Serv.*, 946 F. Supp. 2d 432, 442 (D. Md. 2013), *aff'd*, No. 13-1777, 2014 WL 2809027 (4th Cir. June 23, 2014)). This means that the plaintiff must allege, *inter alia*, that the comparator "'dealt with the same supervisor . . . .'"  *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010) (citation omitted)).  "If different decision-makers are involved, employees are generally not similarly situated." *Forrest v. Transit Mgmt. of Charlotte, Inc.*, 245 F. App'x 255, 257 (4th Cir. 2007).

With the Court's leave, following the Memorandum Opinion discussing the deficiencies in Plaintiff's original complaint and granting Defendants' first motion to dismiss, Plaintiff

amended his pleadings to identify the supervisor who denied his request to attend the training. *See* Am. Compl. in *Mason I* ¶ 21. But, he failed to allege who approved "M.G.'s" request to attend the training. *See id.* Consequently, he has not alleged adequately that he received "less favorable treatment than similarly situated employees outside the protected class." *See Linton*, 2011 WL 4549177, at *5. The County's second motion to dismiss Plaintiff's *Mason I* racial discrimination claim for failure to state a claim IS GRANTED. *See* Fed. R. Civ. P. 12(b)(6).

2.  *Mason II*

In *Mason II*, Plaintiff introduces a new adverse action: his termination. But, his allegations of satisfactory job performance, Compl. in *Mason II* ¶¶ 13–14, 43, which are largely identical to his allegations of satisfactory job performance in *Mason I*, continue to be conclusory and threadbare. Moreover, as in *Mason I*, he has not alleged that he "was performing [his] job duties at a level that met [his] employer's legitimate expectations *at the time* of the adverse employment action." *Lettieri v.*, 478 F. 3d at 646 (emphasis added); *see* Compl. ¶¶ 13–14, 44. Thus, he has not stated a claim for racial discrimination based on his termination. *See Iqbal*, 556 U.S. at 678–79; *Lettieri*, 478 F. 3d at 646. The County's motion to dismiss Plaintiff's *Mason II* racial discrimination claim for failure to state a claim IS GRANTED. *See* Fed. R. Civ. P. 12(b)(6).

**B.      Retaliation (Count II in *Mason I*; Counts II and IV in *Mason II*)**

To state a claim for retaliation under Title VII, a plaintiff must allege sufficiently that (1) he "'engaged in protected activity,'" (2) the employer "'took adverse action against [him],'" and (3) "'a causal relationship existed between the protected activity and the adverse employment activity.'" *Westmoreland v. Prince George's Cnty., Md.*, 876 F. Supp. 2d 594, 612 (D. Md. 2012) (quoting *Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004)). The County challenges

Plaintiff's pleading of the third element in both *Mason I*, *see* Def.'s *Mason I* Mem. 19, and *Mason II*, *see* Def.'s *Mason II* Reply 9.

       1.    *Mason I*

The County argues that Plaintiff's 2008 discrimination claim was "too attenuated" from "the alleged retaliatory actions," which "did not occur until 2011." Def.'s *Mason I* Mem. 19. Plaintiff counters that he alleged various protected activities since 2008, and he correlates those activities to the County's allegedly retaliatory actions. Pl.'s *Mason I* Opp'n 9, 12.

Indeed, Plaintiff alleged that, "[s]ince Spring 2011, Plaintiff regularly complained, verbally and in writing, to his supervisors about the disparate treat[ment] he was being subjected to; filed complaints with Internal Affairs about the disparate treatment; and filed charges of discrimination with the EEOC because of the unlawful, hostile and discriminatory and retaliatory treatment that he was being subjected to." Am. Compl. in *Mason I* ¶ 94. According to Plaintiff, "[n]o less than a month after complaining, Mr. Mason was denied training [by supervisor Lieutenant Herringa], had false information intentionally circulated by his supervisors, and [supervisor Michael] Gordy submitted incorrect information related to Mr. Mason's injury"; three months later, "Mr. Gordy ignored Mr. Mason's request for a post change"; and nine months later, "Mr. Mason was placed on unpaid administrative leave [by the Department], and the Department refused to investigate or discipline a co-worker for making Mr. Mason's personal and confidential [information] public." Pl.'s *Mason I* Opp'n 12 (citing Am. Compl. ¶¶ 19, 21, 26, 28, 30, 34, 41, 43, 50–52). Yet, the cited paragraphs of his Amended Complaint do not allege the "complaining" that preceded these action, let alone identify the date, recipient or form of the complaint. *See* Am. Compl. in *Mason I* ¶¶ 19, 21, 26, 28, 30, 34, 41, 43, 50–52. Nor are these allegations about Plaintiff's "complaining" present elsewhere in the Amended Complaint,

beyond the insufficient, conclusory allegation noted above, that "[s]ince Spring 2011, Plaintiff regularly complained, verbally and in writing, to his supervisors . . . ." *Id.* ¶ 94. This allegation does not state whether supervisors Lieutenant Herringa or Mr. Gordy received any complaints from, or were aware of complaints by, Plaintiff prior to taking any of the alleged retaliatory acts, a deficiency that makes it impossible to determine whether the necessary causal connection between the protected activity and the retaliation has been pleaded. As a result, Plaintiff fails to state a claim for retaliation, and the County's motion to dismiss this claim IS GRANTED. *See* Fed. R. Civ. P. 12(b)(6).

### 2.   *Mason II*

#### a.   Exhausting administrative remedies

In Mason II, the County raises the preliminary issue of whether Plaintiff exhausted his administrative remedies with regard to his claims based on his termination. *See* Def.'s Reply 1. To bring a Title VII employment discrimination claim in federal court, a plaintiff must first "exhaust his administrative remedies." *Van Durr v. Geithner*, No. 12–2137–AW, 2013 WL 4087136, at *4 (D. Md. Aug. 12, 2013) (quoting *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2004)); *see Jones v. Calvert Grp.*, 551 F.3d 297, 300 (4th Cir. 2009). To do so, an individual who believes that she has been discriminated against in violation of Title VII must file a timely complaint with the EEOC pursuant to 42 U.S.C. § 2000e–5(e)(1). *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 406 (4th Cir. 2013); *Jones*, 551 F.3d at 300; *Krpan v. Bd. of Educ. of Howard Cnty.*, No. ELH–12–2789, 2013 WL 4400475, at *5 (D. Md. Aug. 15, 2013). A plaintiff only exhausts her administrative remedies as to "'those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint." *Vann Durr*, 2013 WL 4087136, at *4

(quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996)).   This means that "so long as 'a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation,' she 'may advance such claims in her subsequent civil suit.'" *Sydnor v. Fairfax County, Va.*, 681 F.3d 591, 594 (4th Cir.2012) (quoting *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000)).   In establishing and applying this rule, the Fourth Circuit has "sought to strike a balance between providing notice to employers and the EEOC on the one hand and ensuring plaintiffs are not tripped up over technicalities on the other." *Id.*

Here, Plaintiff filed his last EEOC charge of "discrimination based on race, retaliation and a hostile work environment" on September 2013, Compl. ¶ 68, ECF No. 8-2, and was not terminated until November 19, 2013, *id.* ¶¶ 12, 21.   Thus, the termination claim could not have been a part of his prior EEOC charge. *See* Def.'s *Mason II* Reply 2.   But, "'a reasonable administrative investigation'" of Plaintiff's race discrimination and retaliation claims would have encompassed Plaintiff's termination, as he alleges it as another event in an ongoing series of discriminatory and retaliatory acts, it is "'reasonably related to h[is] EEOC charge,'" and it followed his September 2013 charge by less than two months.   *See Sydnor*, 681 F.3d at 594 (quoting *Smith*, 202 F.3d at 247).   Therefore, Plaintiff exhausted his administrative remedies for his termination claim. *See id.*

#### b.    Causal connection

The County challenges the existence of a causal relationship between Plaintiff's termination and his previous protected activity. Def.'s *Mason II* Reply 9.   Plaintiff alleges that he "regularly complained, verbally and in writing, to his supervisors about the disparate treatment he was being subjected to; filed complaints with Internal Affairs about the disparate treatment;

and filed charges of discrimination with the EEOC." Compl. in *Mason II* ¶ 64. Specifically, he "filed a third EEOC Charge on or around September 2013 based on race, retaliation and hostile work environment." *Id.* at 68.

The County argues that Plaintiff fails to allege that it knew of his September 2013 EEOC charge when it terminated him in November 2013. Def.'s *Mason II* Reply 10. Yet, in his proposed amended complaint, Plaintiff remedies this deficiency by alleging that "the EEOC notified the Department of Plaintiff's September 2013 Charge within ten (10) days of the Charge being filed." Am. Compl. in *Mason II* ¶ 69, ECF No. 8-3. Moreover, I will take judicial notice of the EEOC's website, which states that, "[w]ithin 10 days, [the EEOC] will . . . send a notice and a copy of the charge to the employer." *See* http://www.eeoc.gov/employees/process.cfm; Fed. R. Evid. 201(b). Accordingly, the Amended Complaint adequately pleads notice to the County of Plaintiff's prior protected activity.

The County also contends that Plaintiff's allegations regarding his termination "undercut any contention that his November 19, 2013 termination was related to his September 2013 EEOC charge, as the investigation into the charges against him began well before his allegedly protected activity." Def.'s *Mason I* Reply 9. Noting that "Plaintiff alleges that he 'was proposed for termination after his live in girlfriend filed a domestic case against him' in July 2012," was suspended without pay in August 2012, and was placed on paid leave in December 2012, the County insists that "Plaintiff's termination is directly related to the investigation of the . . . charges against him, which began well before his September 2013 EEOC charge." *Id.* Yet, taken in the light most favorable to Plaintiff, the facts are that Plaintiff was proposed for termination and suspended in 2012 and, during the pendency of the Department's decision on the proposed termination, Plaintiff filed a third EEOC Charge. Only two months later, he was

terminated.  It is logical to infer that Defendant terminated Plaintiff because he filed yet another

EEOC charge, and not because it concluded its investigation into Plaintiff's conduct.  Thus,

Plaintiff has alleged a causal connection between his protected activity and his termination and

stated a claim for retaliation.  *See Price*, 380 F.3d at 212; *Westmoreland* , 876 F. Supp. 2d at 612.

For this reason, the Plaintiff's pleadings in *Mason I*, *Mason II*, and his proposed Amended

Complaint have pleaded a plausible retaliation claim under Title VII and the Maryland Act.

Accordingly, the County's motion to dismiss IS DENIED IN PART as to Plaintiff's Title VII

and Maryland Act retaliation claims based on his termination.  *See* Fed. R. Civ. P. 12(b)(6).

### C.      Hostile Work Environment (Counts I and II in *Mason I*)

"When the workplace is permeated with 'discriminatory intimidation, ridicule, and insult'

that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and

create an abusive working environment,' Title VII is violated." *Harris v. Forklift Systems, Inc*.,

510 U.S. 17, 21 (1993) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 67 (1986)

(internal brackets and quotation marks omitted)).  To state a claim for hostile work environment

based on race, Plaintiff must allege that he was subjected to "'offending conduct'" that (1) "'was

unwelcome,'" (2) "'was because of'" his race, (3) "'was sufficiently severe or pervasive to alter

the conditions of h[is] employment and create an abusive working environment,'" and (4) "'was

imputable to h[is] employer.'" *Westmoreland v. Prince George's Cnty., Md*., 876 F. Supp. 2d

594, 614 (D. Md. 2012) (quoting *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 331 (4th Cir. 2011))

(internal citation and quotation marks omitted)); *see EEOC v. Xerxes Corp.*, 639 F.3d 658, 668–

69 (4th Cir. 2011); *Banhi v. Papa John's USA, Inc*., No. RWT–12–665, 2013 WL 3788573, at *8

(D. Md. July 18, 2013) (same).

The Court dismissed Plaintiff's hostile work environment claim as originally pleaded because "Plaintiff's allegations fail[ed] to create a plausible inference that Defendant took the challenged actions on account of Plaintiff's race," and there was no "suggestion that the conduct was sufficiently severe or pervasive to create an abusive working environment."  Dec. 13, 2013 *Mason I* Mem. Op. 13.  The County insists that Plaintiff's "few amendments" do not remedy these deficiencies.  Def.'s *Mason I* Mem. 9.  Plaintiff insists that his amended pleadings "give a plausible inference that harassing conduct was because of Plaintiff's race."  Pl.'s *Mason I* Opp'n 15.  Assuming *arguendo* this is accurate, I consider whether, as Plaintiff contends, his Amended Complaint sufficiently alleges a hostile work environment by "put[ting] forth facts that establish[] that the Defendant took every opportunity from May 2011 to November 2013, no matter how slight, to create a hostile work environment for Mr. Mason."  *Id.*

"Factors going to the severity and pervasiveness of discriminatory harassment include 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Banhi*, 2013 WL 3788573, at *8 (quoting *Harris*, 510 U.S. at 23); *see Okoli v. City of Baltimore*, 648 F.3d 216, 220 (4th Cir. 2011) (same).  *EEOC v. Sunbelt Rentals, Inc*., 521 F.3d 306, 315 (4th Cir. 2008), set a "'high bar'" that a plaintiff must clear to establish that the offensive conduct was sufficiently severe and pervasive:

> Intermittent acts of harassment are insufficient to establish that a hostile work environment is severe or pervasive. Indeed, Title VII does not mandate civility in the workplace. Further, a supervisor's strict management style or degree of supervision is not evidence of actionable harassment. However, a work environment can be considered hostile if it is "consumed by remarks that intimidate, ridicule, and maliciously demean the status of [a protected group]."

*Engler v. Harris Corp.*, No. GLR–11–3597, 2012 WL 3745710, at *5 (D. Md. Aug. 28, 2012) (internal citations omitted).  Thus, "isolated incidents (unless extremely serious) will not amount

to discriminatory changes in the 'terms and conditions of employment.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (citations omitted); *Romeo v. APS Healthcare Bethesda, Inc.*, No. WDQ–11–2208, 2012 WL 1852264, at *9 (D. Md. May 17, 2012) (quoting *Faragher*). Rather, "courts usually only allow hostile work environment claims to proceed where the discriminatory abuse is near constant, oftentimes of a violent or threatening nature, or has impacted the employee's work performance." *Tawwaab v. Va. Linen Serv., Inc.*, 729 F. Supp. 2d 757, 777 (D. Md. 2010).

As noted, the Court already determined that the allegations in Plaintiff's original Complaint did not allege a hostile work environment. Certainly, Plaintiff has made new allegations of specific incidents:  He had to follow "different and more arduous procedures" to request training, Am. Compl. in *Mason I* ¶ 22; he was "assigned to posts . . . which were considered a dangerous assignment," when "White officers of the same rank as Plaintiff were assigned in a secured area," *id.* ¶¶ 31–32; he was suspended and placed on leave without pay when criminal charges were brought against him, and after he notified his supervisors that the charges were dismissed, "the Department refused to lift Plaintiff's suspension or grant his request to use his 350 hours of annual leave in lieu of being placed on leave without pay," *id.* ¶ 40–42; and the Department "refused to reimburse him for the lost pay and benefits" after reinstatement, *id.* ¶ 49.  Also, Plaintiff has added allegations that his supervisor Mr. Gordy "led the criminal investigation into Plaintiff even though he was named in Plaintiff's initial EEOC charge," *id.* ¶ 46; "placed Plaintiff on [paid leave for] unsubstantiated charges for Conduct Unbecoming an Officer," *id.* ¶ 51; and "allegedly began to harass Plaintiff's girlfriend," *id.* ¶ 47. He also has claimed that "Internal Affairs did not address the matter [of Plaintiff's girlfriend's harassment]," even though she filed a complaint, *id.*, and that "several White Sergeants, with

Plaintiff's supervisors' approval, passed around a petition for White Security Officers to sign stating that they did not want Plaintiff to work with them." *Id.* ¶ 61.  Yet, even though the environment Plaintiff describes is troubling, it simply does not rise to the level necessary to constitute a hostile workplace.  *See Faragher*, 524 U.S. at 788; *Engler v*, 2012 WL 3745710, at *5. The alleged incidents are not "near constant" or "of a violent or threatening nature," and there is no suggestion that they "impacted the employee's work performance." *See Tawwaab*, 729 F. Supp. 2d at 777.  Therefore, the County's motion to dismiss Plaintiff's hostile work environment claim IS GRANTED.

### D.    Equitable Relief (Count V in *Mason I*)[4]

Noting that this Court previously concluded in *Mason I* that Plaintiff's claim for equitable relief was "not properly pleaded" and dismissed it on that ground, the County contends that, given that "Plaintiff has done nothing to properly plead this claim, . . . it should be dismissed with prejudice."  Def.'s *Mason I* Reply 2.  Indeed, in dismissing this claim in 2013, the Court gave the Plaintiff the opportunity to amend to state a claim, as he had failed to do so in his initial pleadings, with the warning that failure to do so could result in dismissal with prejudice.  Dec. 13, 2013 *Mason I* Mem. Op. 12.  Because Plaintiff has not amended this claim, and consequently still has not stated a claim, I will dismiss it with prejudice.  *See* Fed. R. Civ. P. 12(b)(6).

### E.    Motions to Amend

Whether to grant a motion for leave to amend is within this Court's discretion.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Pursuant to Rule 15, "[t]he court should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  But, the Court should deny leave to

---

[4] Plaintiff voluntarily dismissed this claim in *Mason II*.  Pl.'s *Mason II* Mem. 5.

amend if doing so "would prejudice the opposing party, reward bad faith on the part of the moving party, or . . . amount to futility." *MTB Servs., Inc. v. Tuckman-Barbee Constr. Co.*, No. RDB-12-2109, 2013 WL 1819944, at *3 (D. Md. Apr. 30, 2013).   Notably, for purposes of this case, "repeated failure to cure deficiencies by amendments previously allowed" also is a reason to deny leave to amend.  *Foman*, 371 U.S. at 182; *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006).

As noted, Defendants filed a Rule 12(b)(6) motion in *Mason I*, identifying deficiencies in Plaintiff's original pleading, and the Court issued a thorough Memorandum Opinion explaining Plaintiff's failure to state a claim as to each count.   Even though the amendment process envisioned by Fed. R. Civ. P. 15 is not designed to solicit suggestions from the defendant and the Court on how to improve pleading deficiencies, Plaintiff nonetheless procured "essentially a roadmap, namely a decision by this Court outlining those deficiencies," with which he could have "cobble[d] together a plausible and particularized set of allegations to file . . . an[] amended complaint" in *Mason I* and a properly-pleaded complaint in *Mason II*.  *See United States ex rel. Black v. Health & Hosp. Corp. of Marion Cnty.*, No. RDB-08-390, 2011 WL 1161737, at *15 (D. Md. Mar. 28, 2011).   Yet, Plaintiff's Amended Complaint in *Mason I* failed to cure the deficiencies in his complaint.   Further, when the Court previously granted Plaintiff leave to amend, it "caution[ed] Plaintiff that the failure to state facially plausible claims a second time around may result in the dismissal of his claims with prejudice."  Dec. 13, 2013 *Mason I* Mem. Op. 12.  And, in *Mason II*, where Plaintiff filed suit with the benefit of the Court's guidance in *Mason I*, his proposed amendments of the racial discrimination claims demonstrate that amendment would be futile, as they still fail to state a claim.   There comes a time when a plaintiff's serial amendments in the face of motions to dismiss and orders granting that relief

must come to an end and he must stand or fall on the basis of what he already has filed.  That time is now in this case, and Plaintiff's most recent motions to amend will be granted only with respect to the Title VII and Maryland Act retaliation claims in *Mason II* that related to his termination.[5]  His other claims are dismissed with prejudice.  *See Foman*, 371 U.S. at 182.

## V.      CONCLUSION

In sum, PWG-14-3718 with PWG-13-1077 will be consolidated; Defendant's Motion to Dismiss, ECF No. 5 in PWG-14-3718, IS GRANTED IN PART and DENIED IN PART; Plaintiff's Motion to Amend, ECF No. 8 in PWG-14-3718, IS GRANTED IN PART and DENIED IN PART; Defendant's Motion to Dismiss, ECF No. 22 in PWG-13-1077, IS GRANTED;  and Plaintiff's Motion to Amend, ECF No. 26 in PWG-13-1077, IS DENIED. Consequently, Plaintiff's proposed amended complaint in PWG-14-3718, ECF No. 8-3, as limited by this Order, is the operative complaint in the consolidated case, and the only two remaining claims in the consolidated case are for retaliation in violation of Title VII and the Maryland Act, based on Plaintiff's termination.

A separate Order will issue.

Date: <u>June 23, 2015</u>                              _____/S/_____

                                                    Paul W. Grimm
                                                    United States District Judge

lyb

---

[5] With regard to his Title VII and Maryland Act retaliation claims in *Mason II* based on his termination, his proposed amended complaint is accepted as filed.